Ray MARSHALL, Secretary of Labor, U.S. Department of Labor, Plaintiff,

v.

NORTH AMERICAN CAR COMPANY, Defendant.

In the Matter of Establishment Inspection of North American Car Company, N. Thomas Avenue, Sayre, Pennsylvania.

Civ. No. 79-719.

United States District Court, M. D. Pennsylvania.

July 25, 1979.

As Amended Oct. 30, 1979.

---

Marshall H. Harris, Regional Sol., U.S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Mark Lies, Chicago, Ill., John M. Humphrey, Williamsport, Pa., for defendant.

## OPINION

MUIR, District Judge.

### I. Introduction.

The above action was instituted under Miscellaneous No. 79–81 by the filing of an application for an inspection warrant pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq., by Leo Carey, the area director of the Wilkes-Barre Office of the Occupational Safety and Health Administration (OSHA), on May 17, 1979. That application sought a warrant for the inspection of a railroad car repair facility owned and operated by North American Car Company in Sayre, Pennsylvania. On the same day, a United States Magistrate to whom the application for inspection warrant was made issued such a warrant permitting an inspection of the North American Car facility and directing that a return be made within 30 days showing that the inspection had been completed. An inspection was commenced at the Sayre plant by OSHA Health and Safety Compliance Officers but prior to the completion by the inspectors of what they believed to be the inspection authorized by the warrant, employees of North American Car directed them not to return to North American Car's facility. Thereafter, on June 8, 1979, a petition for an issuance of a rule to show cause why North American Car should not be held in civil contempt was filed in this Court. On June 11, 1979, this Court issued a rule to show cause directing that North American Car appear on June 28, 1979 at which time the issue of whether it should be held in contempt of court would be heard. Prior to the hearing, both parties filed pretrial memoranda. On June 28, 1979, at 4:12 P.M. a hearing commenced. That hearing was adjourned at 10:00 P.M. on June 28 and resumed the following day with additional testimony being taken prior to the start of another case at 10:00 A.M. and continuing for a brief period during the lunch hour. The following represent this Court's findings of fact, discussion, and conclusions of law with respect to the question of whether North American Car should be held in contempt for refusing to comply with an administrative search warrant.

### II. Findings of Fact.

1. The petitioner in the above-captioned action is Ray Marshall, the Secretary of Labor.

2. The Respondent in this case, North American Car Company (North American Car) is a corporation with its principal place of business at 222 South Riverside Plaza, Chicago, Illinois.

3. North American Car maintains offices and a railroad car repair facility in Sayre, Bradford County, Pennsylvania, which is within the Middle District of Pennsylvania.

4. On May 9, 1979, following receipt of an employee complaint from Ronald J. Haney, a worker at the Sayre Plant, representatives of OSHA appeared at the North American Car facility and requested permission to conduct an inspection.

5. The OSHA officers were told at that time that they could conduct an inspection without a warrant if they limited the scope of their search to those matters set forth in the employee complaint which OSHA had received.

6. Representatives of North American Car requested permission to see the employee complaint at that time but it was not released to them.

7. On May 17, 1979, the director of the Wilkes-Barre area office of OSHA applied for and was granted an inspection warrant from the United States Magistrate in Wilkes-Barre, Pennsylvania, relating to the North American Car plant.

8. OSHA representatives, including Robert J. Farronato, a safety compliance officer, returned to North American Car on May 21, 1979 and served a copy of the search warrant on Messrs. Sweeney and Haggerty, representatives of North American Car.

9. The OSHA compliance officers were informed on May 21, 1979 that they could enter the premises for purposes of conducting a search but that they would not be permitted to photograph North American Car employees without the consent of such employees although the search warrant authorizes the taking of photographs of employees during the course of the search.

10. Mr. Farronato deemed North American Car's actions to be a refusal to honor the search warrant and he left the premises.

11. Mr. Farronato and other compliance officers returned to North American Car on May 24, 1979 after having been informed by their director that an inspection pursuant to the warrant would be permitted.

12. On May 24, 1979, the inspectors were admitted to the North American Car plant in Sayre and, following such admission, a copy of Mr. Haney's complaint was made available to North American Car.

13. Mr. Haney, the employee who made the complaint, had been fired by North American Car on March 16, 1979 based upon an alleged falsification of a medical report.

14. Mr. Haney's complaint was made to the Wilkes-Barre OSHA office on April 2, 1979.

15. Mr. Haney was reinstated by North American Car on April 10, 1979 by way of a letter from Dominic J. Pace, the plant manager, indicating that although grievance procedures would not avail Mr. Haney with respect to his discharge, it was Mr. Pace's decision to permit Mr. Haney to return to work based upon his prior work performance and his family responsibilities.

16. Mr. Haney's complaint related to specific areas of the North American Car facility which he believed to be unsafe, including lack of ventilation in a building in which employees worked in tank cars, unsafe conditions with respect to an overhead crane in the steel yard, the use of metal tools in the steam rack area of the plant which could cause sparks inside tank cars, exposure of tank cars to cutting torches and welding equipment without being properly cleaned, the heating of the paint shop area with an open flame gas heater, and the fact that the paint shop area was not equipped with non-sparking electrical hook-ups.

17. Upon being admitted to the North American Car facility on May 24, 1979, Mr. Farronato conferred with North American Car officials for approximately one-half of that day and spent the remainder of the day reviewing injury and equipment records which were maintained in the North

American Car office, completing that review on the morning of May 25, 1979.

18. Mr. Farronato began the safety inspection on the afternoon of May 25, 1979. He inspected the wood fabrication shop, a tool storage area, and the air brake shop on that day. Mr. Farronato also inspected the metal fabrication shop and the "cripple" track. On the afternoon of May 25, 1979, Mr. Farronato was informed by North American Car representatives that he would have one more day to complete his inspection because they considered the scope of his inspection to be unreasonable.

19. Mr. Farronato returned on May 29, 1979 and spent another day in his "walkaround" inspection of the plant. During such inspection, he did not enter the storage building, the steam rack, and main steel area, the FRA area, and did not view any storage track facilities. Mr. Farronato also did not inspect the crane or any other item listed in Mr. Haney's complaint.

20. Following the completion of his inspection on May 29, 1979, Mr. Farronato was not permitted to return to the North American Car plant.

21. Mr. Farronato estimated that it would take another 15 working days for him to complete the inspection which he believed was authorized by the search warrant.

22. William F. Davis is a compliance hygiene officer associated with the Wilkes-Barre office of OSHA.

23. Mr. Davis and one other hygiene officer conducted hygiene inspections of the North American Car plant on May 24, May 25, May 29, and May 30, 1979.

24. Upon being admitted to the North American Car plant on May 24, Mr. Davis conducted a "walkaround" inspection after which he conducted two days of "full shift" sampling for silica dust, lead, and excessive noise exposure.

25. Mr. Davis was not permitted to return to North American Car after the completion of his fourth day of testing at the plant.

26. During the time which he spent at the North American Car plant, Mr. Davis did not inspect the sandblasting and paint areas, did not conduct tests for lead, solvents, heavy metals, or hydrogen in the welding area, and did not inspect the "steam rack" area for ventilation as fully as he would have liked to.

27. Mr. Davis is of the view that five more days would be required in order for him to complete the health inspection which he believed was authorized by the search warrant.

28. North American Car also operates a railroad car repair facility at Texarkana, Texas which is three and one-half times as large as the facility in Sayre, Pennsylvania.

29. A safety inspection was performed at the Texarkana plant by OSHA in June of 1979 which took three man-days to complete.

30. The decision to exclude the hygiene officers from North American Car's plant in Sayre, Pennsylvania, after four days of testing, was made by Scott Merrifield, North American Car's safety manager, who has some training in the performance of air sampling tests such as the ones done by Mr. Davis and his associate.

### III. Discussion.

██ The primary issue to be decided by the Court in this case is whether North American Car should be held in contempt based upon its refusal to permit health and safety compliance officers of the Occupational Safety and Health Administration to continue their inspection of the North American Car plant at Sayre, Pennsylvania pursuant to an inspection warrant issued by the United States Magistrate after the inspectors had completed a portion of that inspection. In reaching the determination of whether or not a contempt citation should be issued, it is necessary to decide first whether the facts presented by the Occupational Safety and Health Administration to the Magistrate justified the issuance of an administrative warrant pursuant to the standards for demonstrating that sufficient cause exists to issue such a warrant which are set forth in the decision of

the United States Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). Should the Court determine that a sufficient showing was made before the Magistrate to justify the issuance of an inspection warrant, the next question to be decided is whether the warrant which was issued by the Magistrate and which authorized a total or "wall to wall" inspection of the North American Car plant in Sayre authorized an inspection broader in scope than that which is consistent with the requirement that any search conducted pursuant to a showing of an administrative probable cause be reasonably related to the facts presented to the Magistrate. Finally, if the Court should determine both that the warrant was issued upon a sufficient showing of probable cause and that it was not unduly broad, it must be determined whether North American Car acted reasonably in refusing to permit the health and safety compliance officers to return to the plant after they had conducted approximately four days of inspections pursuant to the warrant. The Court will deal with each of these issues *seriatim*.

■ The first question to be determined is whether the inspection warrant which was issued by the Magistrate was supported by a sufficient showing of probable cause. The warrant was issued pursuant to 29 U.S.C. § 657(f) which states that the Secretary may make a special inspection of an employer's premises upon the receipt of a complaint by an employee or representative of an employee who alleges that a violation of a safety or health standard exists on such premises. As drafted, 29 U.S.C. § 657(f) did not require the Secretary to seek the issuance of an inspection warrant from a Magistrate or other judicial officer prior to going upon premises in order to conduct an inspection in accordance with the act. However, in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court determined that it would violate the Fourth Amendment to permit warrantless inspections of employer's premises and that in order to pass constitutional muster, a requirement that the Secretary seek the issuance of such

a warrant prior to conducting an inspection would be read into § 657. The Court held that the strict standard of probable cause required for the issuance of a search warrant in a criminal case, see *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), need not be satisfied but that the Secretary may obtain an inspection warrant if he can demonstrate that an inspection is reasonable under all the circumstances. Consequently, an inspection warrant is properly issued if the judicial officer to whom the application for a warrant is made concludes, considering the need for an administrative inspection measured in terms of the dangers presented by non-compliance with the administrative standards and whether any other method of enforcement would be effective to insure compliance and weighing such a need against the extent to which the privacy of the person whose premises will be searched is intruded upon by the search, that an inspection is reasonable. See *Whittaker Corp. v. OSHA*, 6 OSHC 1492, 1494 (M.D.Pa.1978), *citing*, *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), and *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). North American Car asserts that in this case, the facts presented to the Magistrate were not sufficient for him to conclude that an inspection of the North American Car facility in Sayre was reasonable, and consequently the warrant should be quashed on the ground that it was issued without a sufficient showing of probable cause.

In order to determine whether a sufficient showing was made to the Magistrate to justify the issuance of an inspection warrant, it is necessary to review the facts which were presented to the Magistrate prior to the issuance of the warrant. The application for an inspection warrant was prepared by Leo Carey, the Supervisor of the Wilkes-Barre Office of OSHA and submitted to the Magistrate on May 17, 1979. The application recited that North American Car maintained a railroad car facility in Sayre, Pennsylvania and that on April 2, 1979 a formal complaint had been received

by the Wilkes-Barre Office from a North American Car employee, Ronald Haney, alleging violations of safety and health standards. Paragraph 4 of the application misstated that the violations set forth in the formal complaint included but were not limited to nine areas of alleged health or safety violations when in fact only those nine areas were set out in the complaint. However, the misstatement appears not to have been material because a typewritten copy of the complaint, prepared by OSHA rather than by Mr. Haney was attached to the application and recited correctly the areas about which the complaint was made. The application further indicated that compliance officer Farronato had attempted to conduct an inspection on May 9, 1979 without a warrant and that permission to do so had been refused by North American Car. Finally, Paragraph 12 of the application recites that on May 5, 1979, Mr. Haney provided more information relating to the alleged violative conditions which are set forth in his employee complaint although it appears that the information does not identify any new alleged violations of the Occupational Safety and Health Act. The original of Mr. Haney's complaint was not presented to the Magistrate and Mr. Haney did not appear in person before the Magistrate.

■■ North American Car asserts that the information contained in the application for an inspection warrant is insufficient to support the issuance of a warrant of any type. The cases cited by North American Car, however, do not stand for the proposition that the information contained in Mr. Carey's application for a search warrant is not sufficient to permit the Magistrate to conclude that an inspection of the North American Car premises was reasonable under all the circumstances of this case. In *Weyerhaeuser Co. v. Marshall,* 592 F.2d 373 (7th Cir. 1979), the Court held that probable cause to issue an administrative warrant had not been established where an application was made based upon a written employee complaint but the substance of the facts asserted in the complaint was not presented to the Magistrate and the application recited only that a complaint had been received and that the complaint alleged that conditions at the plant violated standards promulgated by the Secretary under the Occupational Safety and Health Act. A similar warrant had been quashed by the Court of Appeals for the Seventh Circuit in *In Re Establishment Inspection of Northwestern Airlines, Inc.,* 587 F.2d 12 (7th Cir. 1978). In the present case, however, the application recited not only that a formal complaint had been received by the Wilkes-Barre OSHA office but also informed the Magistrate of the basis of the complaint including the specific health and safety violations which were alleged and indicated that the complaint had been made on April 2, 1979 and further supported on May 5, 1979 so that the information was relatively current. There is no requirement that the actual employee's complaint be made available to the Magistrate or even that the identity of the employee be disclosed when an application for an inspection warrant is made. *See In Re Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1339 (7th Cir. 1979). This Court has held in the past that a specific employee complaint may form the basis for a finding that sufficient cause exists to issue an administrative warrant. *See Whittaker Corp. v. OSHA,* 6 OSHC 1492, 1495 (M.D.Pa.1978). Consequently, the Court concludes that the Secretary made a sufficient showing of probable cause to justify the issuance of an inspection warrant for the North American Car facility at Sayre, Pennsylvania.

Concluding that a sufficient showing of probable cause has been made to justify the issuance of a warrant, however, does not end the Court's inquiry into whether the warrant issued by the Magistrate is reasonable under all the circumstances presented in this case. North American Car asserts that regardless of whether Mr. Haney's complaint and the other information which he supplied to OSHA on May 5, 1979 justified the issuance of an inspection warrant, the warrant actually issued by the Magistrate on May 17, 1979 was impermissibly

broad in scope and consequently should be quashed. The Secretary takes the position, apparently based upon OSHA regulations, that any warrant issued upon the basis of an employee complaint may authorize an inspection which is not limited to the area involved in the complaint. *See* 29 C.F.R. § 1903.11(b). The determination of whether the warrant issued by the Magistrate in this case is of reasonable scope involves a two-step inquiry, namely whether any employee complaint justifies the issuance of a "wall to wall" inspection warrant and, if not, whether the employee complaint in this case involves a sufficiently large area of North American Car's operations at Sayre so as to make an inspection of the entire plant reasonable.

■ The Secretary asserts that a number of decisions have established the proposition that once an employee complaint is presented to a Magistrate, a warrant may be issued which is not limited in scope to the area covered by the employee complaint. However, most of the cases cited by the Secretary do not support that proposition. In *In Re Establishment Inspection of Gilbert & Bennett Mfg. 'Co.,* 589 F.2d 1335 (7th Cir. 1979), the Court considered two appeals involving related questions of whether warrants issued by a Magistrate pursuant to the Occupational Safety and Health Act were valid. In the first appeal, involving Gilbert & Bennett Manufacturing Company, a warrant had been issued on the basis of an employee complaint relating to one alleged violation of Occupational Safety and Health Standards at Gilbert & Bennett's plant. The application also stated that four previous OSHA inspections had resulted in the issuance of citations for Occupational Safety and Health violations. The Court held on that appeal that the facts presented to the Magistrate were sufficient to justify the issuance of a warrant but did not consider the question of whether the scope of the warrant was overly broad, apparently because the issue of breadth of the warrant was not raised on appeal. The other case considered by the Seventh Circuit in the *Gilbert & Bennett* case, involving an appeal of Chromalloy

Company, dealt with an inspection warrant issued not on the basis of an employee complaint but pursuant to a plan of inspection of industries adopted by the Secretary. The warrant issued in that case was very similar to the warrant issued by the Magistrate in this case and permitted an inspection of all areas of the plant. The Court of Appeals upheld the scope of that warrant, which was challenged by Chromalloy on appeal, "[b]ecause the exact location of violations cannot be known prior to entering the establishment . . . ." *Gilbert & Bennett,* 589 F.2d at 1343. It is clear, however, that the reasoning relating to the issuance of a general inspection warrant based upon a showing that a particular industry comes within an industry-wide plan of inspection adopted by the Secretary is not applicable to the situation where a specific employee complaint has been received. In the latter case, it is possible for the warrant to be tailored so as to permit inspection only in that area of the plant where an alleged violation has occurred because the Secretary is not acting without knowledge of what violations, if any, might be found. *Dravo Corp. v. Marshall,* 5 OSHC 2057 (W.D.Pa.1977), *aff'd* 578 F.2d 1373 (3d Cir. 1978), cited by the Secretary, likewise is inapplicable because the decision does not indicate what facts were presented to the Magistrate or the scope of the warrant which was issued. In *Marshall v. Silberline Mfg. Co.,* No. 77–24 (M.D.Pa. October 20, 1977), the Honorable R. Dixon Herman of this Court permitted a general inspection of the employer's premises based upon a showing before the Magistrate that a fire and explosion had occurred at the plant injuring ten employees and rejected the suggestion by the employer that the inspection be limited to the place where the fire began. Judge Herman's decision is clearly based to some extent upon the magnitude of the danger involved. However, the decision can be read to authorize the issuance of a general inspection warrant when a complaint about a particular unsafe condition has been made. To the extent that *Silberline* does so hold, the Court declines to adopt that general proposition.

The Secretary may obtain a warrant to inspect an employer's premises for possible violations of the Occupational Safety and Health Act in one of two ways. He may present to a judicial officer facts indicating that as part of a general administrative plan the premises should be inspected in a general fashion because, for example, the operations carried on in the plant are of a hazardous nature and the plant has not been inspected for a period of time in order to determine whether it is in compliance with applicable standards. Secondly, the Secretary can present a particular employee complaint which alleges that a violation of Occupational Safety and Health Standards is then in existence at the plant. In the former situation, it may well be that a general inspection warrant need be issued because of the difficulty in ascertaining without information gathered through an inspection which particular areas of the employer's premises the Occupational Safety and Health violations are likely to be found. However, in the latter situation the general inspection warrant may not be reasonable under all the circumstances because of the Secretary's ability to determine the precise nature and location of the alleged violations. This Court's decision in *Whittaker Corp. v. OSHA*, 6 OSHC 1492 (M.D.Pa. 1978), is particularly apposite to the facts of this case. In *Whittaker*, the Secretary applied to this Court for an inspection warrant of Berwick Forge's Berwick plant based in large part upon testimony of one employee relating to a defective upper limit switch on an overhead crane which the employee had been operating at the Berwick plant. This Court concluded that it was not reasonable to issue a general inspection warrant which would cover not only the Berwick facility but also a plant operated by the employer in Renovo, Pennsylvania, based upon an employee's assertion that one piece of equipment in the two facilities had defects which posed a threat to employees' safety. Two days after the issuance of the Court's opinion denying the search warrant, the Court did issue a warrant based upon the same testimony but limited the scope of the warrant to an inspection of the allegedly defective crane in the Berwick Forge facility. *See Whittaker Corp. v. OSHA*, 6 OSHC 1495 (M.D.Pa.1978). *Marshall v. Berwick Forge and Fabricating Co.*, 474 F.Supp. 104 (M.D.Pa.1979), decided by the Honorable William J. Nealon, Jr., Chief Judge of this District, is not to the contrary. In that case, which involved an application by Berwick Forge for a stay of a contempt order pending appeal, Judge Nealon concluded that Berwick Forge had not made a showing that it was substantially likely to succeed on the merits of the appeal based upon its contention that a general inspection warrant should not have been issued on the basis of employee complaints. However, the three employee complaints which had been received by OSHA in that case alleged 170 violations of the Occupational Safety and Health Act and covered approximately 15% of the work area in the Berwick Forge plant. Further, the application for a warrant recited that two prior inspections of the Berwick Forge plant had uncovered violations of the Occupational Safety and Health Act. Judge Nealon, citing the decision in *Whittaker Corp. v. OSHA*, 6 OSHC 1492 (M.D.Pa. 1978), recognized that situations might exist where the presentation of an employee complaint would not justify the issuance of a general inspection warrant. However, the large number of complaints, coupled with the area of the Berwick Forge plant covered by the complaints, was found in that case to justify the issuance of a "wall to wall" inspection warrant.

It is the view of the Court that when considering whether a particular inspection warrant is reasonable once probable cause for the issuance of such a warrant has been established, the Court must consider the scope of the warrant as compared to the number and gravity of employee complaints and whether or not it would be possible to limit the warrant so as to be no more intrusive than necessary upon the employer's privacy while accomplishing the remedial purpose of the Occupational Safety and Health Act. The Court agrees that in certain situations employee complaints may

be so pervasive as to justify the issuance of a warrant authorizing inspection of the entire facility. However, if one employee complaint relating to a relatively minor alleged violation of the Occupational Safety and Health Act were always permitted to form the basis of a general inspection warrant, almost any employer's premises could be inspected in totality even though no showing had been made that it was likely that a violation of the Occupational Safety and Health Act would be found in the major portion of the plant either in terms of area or in terms of operations. In such a case an inspection warrant issued on the basis of an employee complaint would authorize a search which exceeds the scope of the invasion of the employer's privacy permitted by the Fourth Amendment. *See also* Central Mine Equipment Co., 3 OSHD ¶ 23,309 (E.D.Mo.1978). Consequently, the Court must determine in this case whether the scope of the warrant issued by the Magistrate was reasonable when considered against the facts which were presented to him by the Secretary.

■ It is the view of the Court that the search warrant which was issued in this case is entirely too broad and exceeds the permissible scope of that inspection which could constitutionally have been authorized based upon the facts set forth in the Secretary's application for a search warrant. The Secretary did not present to the Magistrate sufficient facts which would justify the conclusion that an inspection of the entire North American Car facility at Sayre, Pennsylvania was reasonably necessary to insure that the safety and health of the workers in the plant would not be jeopardized. Rather than the 170 alleged violations which were before Judge Nealon in the *Berwick Forge* case, Mr. Haney asserted only nine possible violations of the Occupational Safety and Health Act. His complaint identified with specificity the areas of the North American Car plant at which the violations allegedly occurred. The application made no reference to the size of the North American Car plant nor to the geographic area covered by the operations alluded to in Mr. Haney's complaint. With-

out those crucial facts, the Magistrate could not have compared the extent of the intrusion which was authorized by a general inspection warrant with the intrusion pursuant to a warrant limited to the areas set forth in the employee complaint. Further, there is no indication in the application for a warrant that the Secretary has discovered in the past that where violations of the type alleged by Mr. Haney are found to exist it is probable that other occupational safety and health violations exist in other parts of a facility such as the one operated in Sayre by North American Car. Consequently, the Court concludes that the warrant issued in this case should have been limited in scope to the areas identified in Mr. Haney's complaint and to such other areas as the safety and health compliance officers would necessarily be required to enter in order to determine whether the violations of the Occupational Safety and Health Act alleged by Mr. Haney had in fact occurred. Under such circumstances, it is appropriate to quash the search warrant.

North American Car also raised as a defense to the contempt proceedings the fact that the Health and Safety compliance officers, during the four or five days which they spent at the Sayre Plant, did not inspect those areas set forth in Mr. Haney's complaint and evidenced no intention of inspecting the same with any immediacy but rather inspected whatever portions of the plant they desired to inspect even after being informed by North American Car officials that their inspections would not be permitted after a certain date. Because the Court has concluded that the search warrant is overly broad and thus unenforceable, the Court will not reach the merits of North American Car's assertion that it acted reasonably in terminating the search.

The Court reaches the following

IV. Conclusions of Law.

1. The application for an administrative warrant made by the Secretary to the United States Magistrate on May 17, 1979 satisfied administrative standards for probable cause which govern the issuance of adminis-

trative search warrants pursuant to 29 U.S.C. § 657.

2. The scope of the search warrant which was issued on May 17, 1979 is not reasonably related to the matters raised in the employee complaint which was filed by an employee of the North American Car company with the Occupational Safety and Health Administration.

3. The inspection warrant issued on May 17, 1979 is invalid under the Fourth Amendment to the United States Constitution.